MAYER, Circuit Judge,
dissenting.
In my view, the special master and the Court of Federal Claims failed to properly apply our holdings in Althen v. Secretary of Health & Human Services, 418 F.3d 1274 (Fed.Cir.2005) and Andreu v. Secretary of Health & Human Services, 569 F.3d 1367 (Fed.Cir.2009). I therefore respectfully dissent.
Peter Broekelschen received an influenza vaccination on October 28, 2005, at the age of 63. Approximately seven weeks after receiving the vaccination, on December 16, 2005, Broekelschen was hospitalized with severe pain in his chest, back, and shoulder. While in the hospital he experienced a range of symptoms, including weakness in his extremities and sensory deficits. Doctors performed numerous tests, including several MRIs, computed tomography scans, a lumbar puncture, and an angiogram, but were unable to conclusively determine the cause of Broekel-schen’s symptoms. Two diagnoses considered by the treating physicians were transverse myelitis (“TM”), a condition caused by inflammation of the spinal cord, and anterior spinal artery syndrome, a condition caused by a blocked blood vessel in the spinal cord. Broekelschen was discharged on December 29, 2005, and transferred to a rehabilitation facility. His discharge summary notes that a diagnosis was not clearly established, but states that the symptoms might be due to a post-vaccine immune reaction. Several months after Broekelschen first experienced symptoms his personal physician noted that, in the absence of another working diagnosis, TM secondary to the vaccination was the most likely cause.
Broekelschen filed a petition seeking compensation under the National Childhood Vaccine Injury Act of 1986 (“Vaccine Act”), 42 U.S.C. §§ 300aa-l to -34, alleging that his symptoms were the result of vaccination induced TM. The special master denied compensation, finding that Broekelschen did not suffer from TM but from the alternative diagnosis of anterior spinal artery syndrome and that thei’e was insufficient evidence to support a theory that this syndrome could be caused by the influenza vaccine. Broekelschen sought review of the special master’s decision in the Court of Federal Claims, which affirmed the decision of the special master denying compensation.
In Althen, we described the burden for a vaccine injury claimant as a three part test. In order to recover, the claimant must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury, (2) a logical sequence of cause and effect showing the vaccination was the reason for the injury, and (3) a temporal relationship between the vaccination and the injury. 418 F.3d at 1278. If the claimant is able to make *1352 such a showing, the government is given the opportunity to show by preponderant evidence that the injury was caused by factors other than the vaccine. Id. In this case, the special master recognized the applicability of the Althen test, but decided that before applying the test it was necessary to first determine a diagnosis for Broekelschen’s symptoms. The special master therefore looked at the competing theories of Broekelschen’s diagnosis and determined that Broekelschen suffered from anterior spinal artery syndrome, as advanced by the government, and not TM. Only then did the special master apply the Althen test and determine that the evidence did not support a finding that the vaccine caused anterior spinal artery syndrome.
This approach, of first assigning a diagnosis to Broekelschen’s symptoms before applying the Althen test, is not supported by statute, caselaw, or logic, and its effect was to impermissibly heighten Broekel-schen’s burden. Contrary to the majority, the language of the Vaccine Act does not support the special master’s approach by narrowly limiting its application to known injuries. Instead, it broadly defines a “vaccine-related injury or death” as “an illness, injury, condition, or death.” 42 U.S.C. § 300aa-33(5). Petitions for compensation must demonstrate that the claimant sustained “any illness, disability, injury, or condition” caused by a vaccine. 42 U.S.C. § 300aa — 11 (c)(1)(C)(ii)(I). Therefore, even in the absence of a definitively diagnosed injury, claimants such as Broekelschen may experience an illness or disability that, with the proper showing of causation, can meet the criteria for a vaccine-related injury under the Vaccine Act.
The majority emphasizes that the parties’ dispute as to the diagnosis makes this case unique and therefore justifies the initial step of determining a diagnosis before applying the Althen test. However, every case is unique and nothing about the facts in this case supports the majority’s unwarranted departure from our precedent. As the special master recognized, the range of symptoms Broekelschen experienced could be explained by either diagnosis, and “determining which condition affects Dr. Broekelschen is one step in determining the cause for Dr. Broekelschen’s condition.” Broekelschen v. Sec’y of Health & Human Servs., No. 07-137V, 2009 WL 440624 at *4 (Fed.Cl.Sp.Mstr. Feb. 4, 2009). Therefore, the analysis of the diagnosis should have been part of the first prong of the Althen test, which requires a “medical theory causally connecting the vaccination and the injury.” 418 F.3d at 1278. The medical theory proposed by Broekelschen was that his symptoms were caused by the vaccine through the pathway of TM; his theory of causation is therefore inextricably linked to the diagnosis. The special master should have first determined whether Broekelschen demonstrated that it was more likely than not that his symptoms resulted from TM caused by an immune response to the vaccine. Only then should the special master have considered whether the government could show by preponderant evidence that other factors caused the injury, ie., that Broek-elschen’s symptoms were caused by anteri- or spinal artery syndrome unrelated to the influenza vaccine.
The majority cites to Doe v. Secretary of Health & Human Services, 601 F.3d 1349 (Fed.Cir.2010), in support of the proposition that the special master appropriately considered the government’s alternative theory of diagnosis prior to applying the Althen test. That reliance is misplaced. In Doe we affirmed the decision of a special master who allowed the government to present evidence that the cause of death was sudden infant death syndrome (“SIDS”), rather than a vaccine, to rebut the claimants’ theory of causation. Id. *1353 The claimants in that case, however, relied on the elimination of SIDS as a potential cause of death to establish their prima facie case, and the special master considered the evidence relating to SIDS only “in evaluating whether Doe’s proposed sequence of cause and effect was plausible.” Id. at 1353. Here the special master did not limit his evaluation of the government’s theory of diagnosis to determining whether it undercut the evidence Broekel-schen presented to establish a prima facie case. Instead, he used diagnosis as a prerequisite step, denying Broekelschen the opportunity of even attempting to establish a prima facie case. In any event, Doe does not overrule our precedent that a vaccine claimant is not required to eliminate alternative causes of injury in establishing a prima facie case. Id. at 1358 (“A petitioner’s failure to meet his burden of proof as to the cause of an injury or condition is different from a requirement that he affirmatively disprove an alternative cause.”); see also de Buzan v. Sec’y of Health & Human Servs., 539 F.3d 1347, 1352 (Fed. Cir.2008) (“So long as the petitioner has satisfied all three prongs of the Althen test, she beai-s no burden to rule out possible alternative causes.”); Walther v. Sec’y of Health & Human Servs., 485 F.3d 1146, 1150 (Fed.Cir.2007) (“[T]he Vaccine Act does not require the petitioner to bear the burden of eliminating alternative causes where the other evidence on causation is sufficient to establish a prima facie case.”).
The special master also erred in basing his decision, in part, on his view that the government’s expert witness was more credible than Broekelschen’s. While the special master praised the exjserience and demeanor of both experts, he stated that he gave more weight to the government’s expert because he found the government’s expert to have a more persuasive demean- or and a more impressive background. Broekelschen, 2009 WL 440624 at *13, *18. This analysis is inappropriate for two reasons. First, the Althen test does not support a head-to-head comparison between dueling experts, but shifts the burden to the government only after the claimant has made a prima facie case for entitlement. The special master therefore should not have analyzed which expert was more persuasive, but whether Broekelschen’s expert, along with the record evidence, showed that it was more likely than not that Broekelschen’s condition was caused by TM resulting from the vaccination. If so, the special master’s analysis should have continued to determine whether the government’s expert showed that it was more likely than not that the condition was caused by factors unrelated to the vaccine.
Second, while the credibility determinations of special masters are owed deference, we have held that credibility determinations are appropriately used to assess the candor of a fact witness, “not to evaluate whether an expert witness’ medical theory is supported by the weight of epidemiological evidence.” Andreu, 569 F.3d at 1379. In other words, credibility determinations can be used to determine if an expert is reliable, but weighing the persuasiveness of the competing medical theories is a separate analysis. Once the special master determined both experts were highly qualified and reliable, there was no reason for him to give any additional weight to the background or demeanor of the government’s expert. The focus should have been solely on the “relative persuasiveness of the competing medical theories of the case.” Lampe v. Sec’y of Health & Human Servs., 219 F.3d 1357, 1362 (Fed.Cir.2000).
Our decision in Moberly v. Secretary of Health & Human Services, 592 F.3d 1315 (Fed.Cir.2010), in which we affirmed the denial of a claim where the special master discredited the testimony of the claimant’s expert, does not support the approach tak *1354 en by the special master in this case. In Moberly, none of the treating physicians expressed the view that the claimant’s injury was caused by the vaccination she received. Instead, the record evidence supporting the opinion of the claimant’s expert “amount[ed] at most to a showing of temporal association between a vaccination and a seizure, together with the absence of any other identified cause for the ... injury.” Id. at 1323. In this case, contemporaneous records created by treating physicians support Broekelschen’s theory. Furthermore, the special master and both experts noted that there is evidence in the record to support and refute each of the two potential diagnoses. While nothing in the record conclusively proves that Broekelschen’s symptoms were caused by TM resulting from the vaccination, conclusive proof is not required. Knudsen v. Sec’y of Heath & Human Servs., 35 F.3d 543, 548-49 (Fed.Cir.1994) (“The determination of causation in fact under the Vaccine Act involves ascertaining whether a sequence of cause and effect is ‘logical’ and legally probable, not medically or scientifically certain.”); see also Althen, 418 F.3d at 1280 (“[T]he purpose of the Vaccine Act’s preponderance standard is to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body.”).
The majority holds that the special master’s error in weighing the expert witnesses’ credibility is harmless. This is mere speculation. It is not clear that the outcome of the case would have been the same if the special master had appropriately weighed the expert witness testimony, particularly if he had done so within the prevailing framework of Althen by allowing Broekelschen to attempt to make a prima facie showing that his symptoms resulted from vaccine-induced TM. I would therefore remand to allow the special master to properly apply the test laid out in Althen to Broekelschen’s claim and appropriately weigh the expert witness testimony.