# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 13-102V
September 17, 2013
Reissued redacted on October 1, 2013
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
| | |
|---|---|
| CHONDRA WILLIAMS and ERIK | \* |
| WILLIAMS, natural parents and guardians | \* |
| ad litem for J.W., a minor, | \* |
| | \* |
| Petitioners, | \* |
| | \* |
| v. | \* |
| | \* |
| SECRETARY OF HEALTH | \* |
| AND HUMAN SERVICES, | \* |
| | \* |
| Respondent. | \* |

Thin corpus callosum; no expert for petitioners; petitioners' motion for a ruling on the record

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Carol L. Gallagher, Linwood, NJ, for petitioners.
Alexix B. Babcock, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the categories listed above, the special master shall redact such material from public access. On October 1, 2013, petitioners moved to redacted their child's name to his initials. The undersigned grants their motion and so redacts his name to his initials.

On February 14, 2013, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–10-34 (2012), alleging that hepatitis B, diphtheria-tetanus-acellular pertussis (DTaP), haemophilus B influenza (HiB), pneumococcal (Prevnar), and inactivated polio (IPV) vaccines administered on March 1, 2010 caused their son J.W.'s hypotonia. Pet. at 1. J.W. was born with a thin corpus callosum. Med. recs. Ex. 9, at 20; Ex. 3, at 9; Ex. 4, at 31. He had hypotonia, developmental delay, failure to thrive, and cerebral palsy. Pet. at 1; Med. recs. Ex. 3, at 11; Ex. 1, at 2.

On May 7, 2013, petitioners filed an amended petition, alleging that the March 1, 2010 vaccines significantly aggravated symptoms that began after J.W.'s October 27, 2009 vaccinations, consisting of DTaP, IPV, HiB, hepatitis B, Prevnar, and rotavirus vaccines. Am. Pet. at 1–2. In addition, petitioners allege that subsequent vaccinations on May 10, 2010, August 6, 2010, September 8, 2010, and March 30, 2011 significantly aggravated J.W.'s condition. Id. at 1. Petitioners never filed an expert report in support of their allegations.

On September 17, 2013, petitioners moved for a ruling on the record, understanding that without expert support of their allegations, this case would be dismissed.

The undersigned **GRANTS** petitioners' motion for a ruling on the record and dismisses this case.

## FACTS

J.W. was born on August 3, 2009.

On October 27, 2009, he received his first DTaP, first IPV, first HiB, second hepatitis B, first Prevnar, and first rotavirus vaccines. Med. recs. Ex. 3, at 2.

On March 1, 2010, J.W. received his second DTaP, second IPV, second HiB, second Prevnar, and third hepatitis B vaccinations. Id. His pediatrician Dr. Yasser Hassane noted at this visit that J.W. had lack of eye control and contact. Med. recs. Ex. 12, at 1. Dr. Hassane questioned whether J.W. had autism and recommended his parents take him to a neurologist. Id.

On March 17, 2010, J.W. was diagnosed at Henry Ford Macomb Hospitals with an upper respiratory infection for the prior three days. Med. recs. Ex. 5 at 564–65. He had a low-grade fever, but was eating and drinking normally. Id. at 565. His range of symptoms was otherwise normal. Id. at 560, 563.

On May 5, 2010, J.W. saw his pediatrician Dr. Hassane, who noted that J.W. had hypotonia. Med. recs. Ex. 3, at 9.

On June 1, 2010, J.W. underwent an EEG, which was normal. Med. recs. Ex. 4, at 85.

2

On June 11, 2010, Katie Garrisi conducted a family interview and psychological evaluation as part of an investigation for preschool assessment of J.W.'s global developmental delay. Med. recs. Ex. 9, at 5. J.W.'s mother reported that, at about four to five months of age, J.W. exhibited behavioral episodes she described as spasms. Id. at 6. (J.W. was four to five months of age December 2009 to January 2010. His first vaccinations occurred October 27, 2009. His second vaccinations occurred March 1, 2010.) J.W.'s mother gave the same history of onset of several spasms to both Jean Vandelinder, a physical therapist, and Patricia Cox, an occupational therapist, also evaluating J.W. on June 11, 2010. Id. at 9, 11.

On June 13, 2010, J.W. had a brain MRI, which showed he had a thin corpus callosum.[2] Id. at 20.

On June 22, 2010, J.W. saw his pediatrician, who diagnosed him with hypotonia, poor eye contact, developmental delay, and a thin corpus callosum. Med. recs. Ex. 3, at 9.

On January 7, 2011, J.W. was at Children's Hospital of Michigan, where Dr. Charles Pelshaw, a pediatric physiatrist, took a history from J.W.'s parents that, when J.W. was three to four months of age, his parents noticed that his developmental progress started to go backwards. Med. recs. Ex. 9, at 27. Whereas before, he could track with his eyes, he lost this ability. Id. Whereas before, he could lift his head and roll, he lost this ability. Id. He had generalized weakness in his upper and lower extremities and his neck and trunk. He clasped his arms and clenched his muscles. Id. (J.W. was three to four months of age from November to December 2009. His first vaccinations were in October 2009, and his second vaccinations were in March 2010.)

On March 30, 2011, J.W. saw his pediatrician, who diagnosed him with failure to thrive, cerebral palsy, retardation, and hypotonia. Med. recs. Ex. 3, at 11. J.W. responded to voice and noise. Id.

On June 20, 2012, J.W. had a brain MRI, which showed not only a thin corpus callosum, but also incomplete myelination of the corpus callosum and of the most anterior frontal subcortical white matter. Med. recs. Ex. 4, at 31. He had nonspecific, abnormal $T_2$ increased hyperintensity within the peritrigonal region, which may have represented an underlying white matter disease, an inborn error of metabolism, or a prior ischemic event. Id. at 32.

On December 24, 2012, J.W. was at Henry Ford Macomb Hospital, where Dr. Leonard B. Pollack wrote that J.W. had congenital hypotonia and was recently diagnosed with cerebral palsy. Med. recs. Ex. 5, at 21. Dr. Pollack recorded that J.W.'s parents gave a history that by

---

[2] The corpus callosum is "an arched mass of white matter, found in the depths of the longitudinal fissure, composed of three layers of fibers, the central layer consisting primarily of transverse fibers connecting the cerebral hemispheres . . . ." Dorland's Illustrated Medical Dictionary 417 (32d ed. 2012)

about four months of age (or about early December 2009, which was about six weeks after his October 27, 2009 vaccinations and three months before his March 1, 2010 vaccinations), his parents noted that J.W. was hypotonic and developmentally delayed.  Id.

## DISCUSSION

To satisfy their burden of proving causation in fact, petitioners must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]" the logical sequence being supported by "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioner's affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149.  Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

Petitioners must show not only that but for J.W.'s vaccinations, J.W. would not have had hypotonia, failure to thrive, cerebral palsy, and developmental delay or these conditions would not have been as severe, but also that the vaccines were a substantial factor in causing or significantly aggravating his hypotonia, failure to thrive, cerebral palsy, and developmental delay. Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

Petitioners have not filed an expert report in support of their allegations, and the medical records do not substantiate their allegations.  The Vaccine Act does not permit the undersigned to rule in favor of petitioners based solely on their allegations, unsupported by medical records or credible medical opinion.  42 U.S.C. § 300aa-13(a)(1) (2012).

The Federal Circuit has emphasized that special masters are to consider seriously the opinions of treating physicians. Broekelschen v. Sec'y of HHS, 618 F.3d 1339, 1347 (Fed. Cir. 2010); Andreu v. Sec'y of HHS, 569 F.3d 1367, 1375 (Fed. Cir. 2009); Capizzano v. Sec'y of HHS, 440 F.3d 1317, 1326 (Fed. Cir. 2006).  Here, Dr. Pollack diagnosed J.W. with congenital hypotonia at Henry Ford Macomb Hospital.  Med. recs. Ex. 5 at 21.  The radiologist who read J.W.'s brain MRI on June 20, 2012 attributed his brain abnormalities to a possible inborn error of

metabolism. Med. recs. Ex. 4, at 32. The doctors noted he was born with a thin corpus callosum. Med. recs. Ex. 9, at 20; Ex. 3, at 9; Ex. 4, at 31. Those born with abnormalities of the corpus callosum can have developmental delay, cerebral palsy, hypotonia, and failure to thrive. Dawn J. Cardeiro, Agenesis of the Corpus Callosum, Healthline (2005), http://www.healthline.com/galecontent/agenesis-of-the-corpus-collosum. J.W. has developmental delay, cerebral palsy, hypotonia, and failure to thrive. None of his treating physicians attributed these abnormalities to his vaccinations.

Because petitioners have not filed an expert medical report, and the treating doctors' records offer no support of causation, petitioners have not satisfied the three prongs of Althen: (1) they have not presented a credible medical theory explaining how these vaccinations caused or significantly aggravated J.W.'s condition; (2) they have not proved there is a logical sequence of cause and effect showing that these vaccinations caused or significantly aggravated J.W.'s condition; and (3) they have not shown that the time interval is medically appropriate to support a conclusion of causation or significant aggravation. They have failed to make a prima facie case.

Petitioners' motion for a ruling on the record is **GRANTED**. This petition is hereby **DISMISSED**.

## CONCLUSION

Petitioners' petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

September 17, 2013                                    s/Laura D. Millman
DATE                                                Laura D. Millman
                                                    Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.