NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HOLLY AUSTIN, PARENT OF K.A., A MINOR,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2019-1379

---

Appeal from the United States Court of Federal Claims in No. 1:05-vv-00579-LKG, Judge Lydia Kay Griggsby.

---

Decided: June 26, 2020

---

HOLLY AUSTIN, Rangeley, ME, pro se.

MOLLIE GORNEY, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JOSEPH H. HUNT, C. SALVATORE D'ALESSIO, HEATHER LYNN PEARLMAN, CATHARINE E. REEVES.

---

Before MOORE, O'MALLEY, and HUGHES, *Circuit Judges.*

PER CURIAM.

Holly Austin appeals a decision of the United States Court of Federal Claims that affirmed the Special Master's decision denying Ms. Austin compensation under the National Vaccine Injury Act. Because the Special Master did not err in deciding that Ms. Austin failed to prove that K.A., her son, experienced a post-vaccination encephalopathy, we affirm.

I

In 2005, Ms. Austin filed a petition on behalf of her minor son, K.A., for compensation under the National Vaccine Injury Act, 42 U.S.C. §§ 300aa-1–34. According to Ms. Austin, the routine childhood vaccinations K.A. received in 2003 and 2004 triggered and then exacerbated an autoimmune encephalopathic process that resulted in K.A. experiencing seizures and developmental regression.

In a thorough, almost 40-page opinion, the Special Master concluded that Ms. Austin failed to establish entitlement to compensation. *Austin v. Sec'y of Health & Human Servs.*, No. 05-579V, 2018 WL 3238608 (Fed. Cl. May 15, 2018) (*Special Master Op.*), *review denied, decision aff'd*, 141 Fed. Cl. 268 (2018). The Special Master reviewed K.A.'s medical records; reports from the Secretary's expert, Dr. Gregory Holmes, and Ms. Austin's expert, Dr. Yuval Shafrir; submitted medical literature; and the parties' briefs. From this record, the Special Master concluded that Ms. Austin did not provide preponderant evidence for any of the *Althen* prongs. *See Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). In particular, he found that the record evidence did not support that K.A. experienced an encephalopathy, vaccine-induced or otherwise. *Special Master Op.* at *23–24. The Special Master also determined that a hearing was unnecessary, given the well-developed record and his familiarity with this type of case, generally, and with Ms. Austin's expert witness, in

particular. *Id.* at \*22, \*28. The Special Master therefore entered a ruling on the record denying compensation.

Ms. Austin sought review of the Special Master's decision in the United States Court of Federal Claims, making many of the same arguments she makes in her appeal to this Court. The Court of Federal Claims affirmed the Special Master's decision. *Austin v. Sec'y of Health & Human Servs.*, 141 Fed. Cl. 268 (2018).

Ms. Austin timely appealed. We have jurisdiction under 42 U.S.C. § 300aa-12(f).

## II

"We review an appeal from the Court of Federal Claims in a Vaccine Act case de novo, applying the same standard of review that court applied in reviewing the special master's decision." *Milik v. Sec'y of Health & Human Servs.*, 822 F.3d 1367, 1375–76 (Fed. Cir. 2016) (citations omitted). We will only overturn the Special Master's findings of fact or conclusions of law that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa-12(e)(2)(B); *Moriarty by Moriarty v. Sec'y of Health & Human Servs.*, 844 F.3d 1322, 1327 (Fed. Cir. 2016). "[R]eversible error is extremely difficult to demonstrate if the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision." *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (internal quotations omitted).

"A petitioner seeking compensation under the Vaccine Act must show, by a preponderance of evidence, 'that the injury or death at issue was caused by a vaccine.'" *Milik*, 822 F.3d at 1379 (quoting *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1341 (Fed. Cir. 2010); 42 U.S.C. §§ 300aa–11(c)(1), –13(a)(1). In an "off-Table Injury" case such as this one, a petitioner must prove causation-in-fact, i.e., by showing by a preponderance of the

evidence: (1) a medical theory causally connecting the vaccination to the injury; (2) a logical sequence of cause and effect demonstrating that the vaccination caused the injury; and (3) a proximate temporal relationship between the vaccine and the injury. *Althen*, 418 F.3d at 1278. These are the so-called *Althen* prongs. Ms. Austin therefore had to prove, by preponderant evidence, that the vaccines K.A. received in 2003 and 2004 were the cause-in-fact of K.A.'s claimed injury—an encephalopathy leading to developmental regression.

Though the Special Master analyzed each of the *Althen* prongs, he correctly identified a threshold issue that impacts all three. *Special Master Op.* at *23–28. Ms. Austin's causation theory depends on a finding that K.A. experienced an encephalopathy. *Id.* at *23. The Special Master found that K.A.'s medical records contained no evidence that K.A. experienced any encephalopathy, let alone a vaccine-induced one. *Id.* ("The facts from the medical record, however, do not support the conclusion that K.A. experienced any kind of encephalopathy reaction after his July 29, [2003], vaccinations (or subsequent vaccinations in December [2003] and June [2004])."). This finding was based on a full review of the record and was neither arbitrary nor capricious.

In so finding, the Special Master noted that none of the medical professionals who evaluated K.A. "ever proposed that he suffered from an encephalopathic reaction." *Id.* at *24. And, he contrasted K.A.'s medical records with the "exceedingly rare cases . . . establish[ing] an encephalopathy resulting in ASD-like symptoms," noting that in K.A.'s case "there are no records establishing any sort of proximate temporal reaction to the vaccines that would support a finding that K.A. experienced such an encephalopathy." *Id.* at *24 n.23. Though K.A. experienced a seizure the day of his July 2003 vaccinations and on several more occasions in 2003 and 2004, as the Special Master noted, "proof of

seizures alone is generally not considered sufficient to establish an encephalopathy." *Special Master Op.* at *23.

Ms. Austin argues that the Special Master erred in this determination for several reasons that revolve around her contention that, in 2003 and 2004, autoimmune encephalopathy was poorly understood. Pet. Br. 39. Ms. Austin contends that this lack of understanding meant that K.A. was not medically evaluated in a way that would produce evidence of an autoimmune encephalopathy. She also contends that the Special Master relied on the table definition of encephalopathy instead of allowing for advances in the scientific understanding of the condition. Finally, Ms. Austin argues that the Special Master should have provided her the opportunity to present evidence on advances in understanding autoimmune encephalopathy in a hearing.

As an initial matter pertinent to all three of these arguments, the key piece of literature[1] that Ms. Austin cites to demonstrate advances in understanding and diagnosing autoimmune encephalopathy—which was allegedly overlooked by the Special Master—was not discussed or cited by her expert, or otherwise made a part of the record in this case when it was before the Special Master. Ms. Austin cannot fault the Special Master for not considering a piece of evidence she never presented to him. Rules of the U.S. Court of Federal Claims, Appendix B, Vaccine Rule 8(f)(1) ("Any fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision."). *See also Weddel v. Sec'y of Health & Human Servs.*, 23 F.3d 388, 390 n.2 (Fed. Cir. 1994) (noting that "Congress has expressly forbidden" this

---

[1]    Francesc Graus et al., A clinical approach to diagnosis of autoimmune encephalitis, 15 Lancet Neurol. 391 (2016).

Court from considering arguments that the petitioners did not raise before the special master).

At bottom, then, Ms. Austin's first argument asks this court to reweigh the factual evidence in favor of her interpretation of K.A.'s medical records and to reassess the credibility of the witnesses. But we can do neither. Our task is not to "reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011). "Rather, as long as the special master's conclusion is based on evidence in the record that is not wholly implausible, we are compelled to uphold that finding as not being arbitrary or capricious." *Milik*, 822 F.3d at 1376 (internal quotation marks, citation, and original alterations omitted). Here, the record evidence supports the fact that none of K.A.'s treating physicians concluded that he experienced an encephalopathy, let alone a vaccine-induced one, resulting in his seizures or developmental regression.[2] The only medical professional who disagreed with this conclusion was Ms. Austin's expert, Dr. Shafrir. And the Special Master thoroughly analyzed Dr. Shafrir's reports in light of the overall record before concluding that K.A. had not experienced an

---

[2] Notably, this was not the case in *Moriarty*, where one treating physician noted their suspicion that the child had Lennox-Gastaut syndrome, "a form of age-dependent epileptic encephalopathy," and another later diagnosed her with "[s]tatic encephalopathy of unknown etiology." *Moriarty*, 844 F.3d at 1325 (alteration in original). Ms. Austin's arguments comparing the two cases are therefore unavailing.

encephalopathy.  *See*, *e.g.*, *Special Master Op.* at \*8–13. The Special Master's decision was not arbitrary or capricious.

Ms. Austin's second argument—that the Special Master rigidly, and incorrectly, relied on the Table definition of encephalopathy—does not accurately reflect the Special Master's decision.  To the contrary, the Special Master clearly explained that "although the term 'encephalopathy' is less strictly defined in the context of a non-Table claim, it nevertheless is not so elastic as to include any possible type of brain injury no matter the degree." *Special Master Op.* at \*23.  And, that "even though a petitioner with a non-Table causation-in-fact claim may evade some of the Table's requirements for establishing an encephalopathy (such as that it is both 'acute' and 'chronic' . . .) a non-Table petitioner will still need to point to reliable evidence from the record establishing that the injured party's symptoms were sufficiently evident and severe to constitute an encephalopathy." *Id.* (citing non-Table encephalopathy cases).  Further, the Special Master compared K.A.'s symptoms to other cases of alleged non-Table encephalopathies and found that K.A. had not experienced symptoms sufficiently "evident and severe" so as to constitute an encephalopathy. *Id.* at \*23–24.  We do not find this conclusion wholly implausible based on the record.

Finally, the Vaccine Rules explicitly authorize a Special Master to "decide a case on the basis of written submissions without conducting an evidentiary hearing." Vaccine Rule 8(d); *see generally Kreizenbeck v. Sec'y of Health & Human Servs.*, No. 08-209V, 2018 WL 3679843 (Fed. Cl. June 22, 2018), *review denied, decision aff'd*, 141 Fed. Cl. 138 (2018), *aff'd*, 945 F.3d 1362 (Fed. Cir. 2020).  As Congress intended and the Vaccine Act requires, Ms. Austin has had ample opportunity since this case began in 2005 "to submit arguments and evidence on the record," 42 U.S.C. § 300aa-12(d)(2)(A), (C)–(D), of any advances in the medical or

scientific understanding of autoimmune encephalopathy by submitting medical records and expert reports. Having had this opportunity, she cannot now argue that the only avenue to showcase her claim effectively was through a hearing. After all, "[i]t is reasonable to expect experts to prepare reports accurately reflecting the opinion they intend to offer at trial, with all necessary evidentiary support to bulwark the opinions included, rather than as a 'teaser,' with the best and most persuasive parts withheld so they may be unfurled at hearing in dramatic fashion." *Kreizenbeck*, 2018 WL 3679843, at *35.

In sum, Ms. Austin has not provided reason to set aside the Special Master's determination that she failed to show by preponderant evidence that K.A. experienced an encephalopathy.

## III

Because we agree that Ms. Austin's claim has failed to show the alleged injury by preponderant evidence, we do not address the remainder of her objections to the decision. Ms. Austin is not entitled to compensation under the National Vaccine Injury Act. We therefore affirm.

**AFFIRMED**

No costs.