NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAMUEL WEBB,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2021-2276

---

Appeal from the United States Court of Federal Claims in No. 1:15-vv-00803-VJW, Senior Judge Victor J. Wolski.

---

Decided:  April 11, 2022

---

SAMUEL WEBB, Tucson, AZ, pro se.

JULIA COLLISON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by BRIAN M. BOYNTON, C. SALVATORE D'ALESSIO, GABRIELLE M. FIELDING, HEATHER LYNN PEARLMAN.

---

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

PER CURIAM.

Mr. Samuel Webb appeals a decision by the U.S. Court of Federal Claims sustaining the special master's decision dismissing Mr. Webb's petition for compensation for a vaccine injury. Mr. Webb argues that the special master abused his discretion by failing to conduct a status conference after the government submitted its supplemental Vaccine Rule 4(c) report and that the special master acted arbitrarily and capriciously in finding that Mr. Webb's Bell's palsy symptoms began before his November 20, 2012 flu vaccine. For the reasons explained below, we affirm.

BACKGROUND

I

In October 2011, Mr. Webb developed Bell's palsy on his right side. Appx 29. In September and October of 2012, Mr. Webb submitted several Health Needs Requests to the Maricopa County Jail, where he was incarcerated. *See* Appx 59–62. In one request dated September 25, 2012, Mr. Webb sought a psychological evaluation. Appx 61. In three subsequent requests dated October 19, 2012, October 24, 2012, and October 29, 2012, Mr. Webb stated that he could not close his eye because of his Bell's palsy, and so he asked for "artificial tear solution" and "perforated bondage tape" so that he could "tape [his] eye shut" to improve his sleep. Appx 62; *see also* Appx 59–60 (repeating request for tape).

Meanwhile, on October 9, 2012, Mr. Webb underwent a routine medical examination to check his blood pressure. Appx 35, 48. The medical report stated that Mr. Webb had "no concerns/complaints" and showed no distress. Appx 35, 48. On November 12 and 13, 2012, Mr. Webb had his blood drawn. Appx 35, 48. Like the October 9, 2012 medical record, these records did not mention Bell's palsy. *See* Appx 35, 48.

On November 20, 2012, Mr. Webb received a seasonal flu vaccine. Appx 30. Mr. Webb returned to the doctor on November 30, 2012. Appx 33. The medical record of that appointment states that Mr. Webb informed the physician that he had developed Bell's palsy on September 21, 2012, and that Mr. Webb did not submit a Health Needs Request in relation to his symptoms because he thought nothing could be done. *Id.* The record also stated that Mr. Webb believed the Bell's palsy occurred due to the stress of his trial in early September 2012, and that his symptoms had improved since that time. *Id.*

## II

On July 29, 2015, Mr. Webb filed a petition for compensation under the National Childhood Vaccination Injury Act, 42 U.S.C. §§ 300aa-10 to -34, in the U.S. Court of Federal Claims. Appx 2, 19. He alleged in his petition that he received a flu vaccine on November 20, 2012, and that the vaccine caused him to develop Bell's palsy on his left side. Appx 11, 19.

On August 31, 2015, Mr. Webb filed a statement alleging facts in support of his claim. *See* Appx 2, 28–32. He alleged, among other things, that several days after receiving his November 20, 2012 vaccine, he began experiencing Bell's palsy on the left side of his face. Appx 30. He alleged that he "went through the same experiences" on the left side of his face that he had in previous months on the right side of his face. *Id.* He alleged that his sentencing took place on December 5, 2012, and that during the proceeding the left side of his face was drooping, he was unable to close his left eye, and his speech was impeded. *Id.* "Eventually," he alleged, his "movement came back and [he] regained motor function." *Id.*

Mr. Webb also alleged that he received another seasonal flu vaccine in 2013, and "[i]t was at th[at] time that [he] became informed about the possibility that [his] Bell's palsy symptoms on the left side of [his] face were caused by

a reaction to [his] seasonal flu shot." *Id.* He later refused his seasonal flu vaccine in 2014 on the belief that he had experienced an "adverse reaction to the flu vaccination." *Id.* Despite that refusal, Mr. Webb alleged, he continued having symptoms on the left side of his face. Appx 31. According to Mr. Webb's statement, his "symptoms ha[d] tapered off since [he] refused [his] 2014 seasonal flu vaccination," but he nevertheless continued to suffer paralysis on both sides of his face. *Id.* His symptoms became "infrequent and almost non-existent," but he "still ha[d] not recovered full movement of [his] face." Appx 32. This affected his daily life by impacting, for example, his ability to eat and speak. *Id.*

On August 4, 2015, the special master set a deadline of September 4, 2015, for Mr. Webb to submit outstanding evidence, such as medical records and affidavits. Appx 12, 19. Mr. Webb obtained multiple extensions of time. *See* Appx 2–3. On December 11, 2015, the special master held a status conference. Appx 3. On January 19, 2016, Mr. Webb filed a statement of completion. Appx 3–4.

On April 20, 2016, the government submitted a report addressing the allegations and records submitted up to that point. Appx 4; *see also* Rule 4(c) of the Vaccine Rules of the United States Court of Federal Claims ("Vaccine Rules"). On April 26, 2016, the special master held a status conference. *Id.*

On July 20, 2016, Mr. Webb's counsel moved to withdraw from the case. Appx 5. Mr. Webb continued pro se from that point forward. *See id.* On October 13, 2016, Mr. Webb moved for leave to file an amended petition. *Id.* On October 31, 2016, the special master held a status conference and subsequently set a deadline of December 16, 2016, for Mr. Webb's amended petition. Appx 5–6.

Mr. Webb again sought and obtained a series of extensions. Appx 6–7. On October 4, 2017, he filed his amended petition and a statement of completion. Appx 7. On

March 20, 2018, the special master held a status conference. *Id.* During the conference, the special master directed Mr. Webb to file his additional exhibits as soon as possible and directed the government to file a supplemental report within 60 days after Mr. Webb's submission. Appx 7–8. On April 4, 2018, Mr. Webb submitted medical literature. Appx 8. On June 4, 2018, the government submitted its supplemental report as well as a motion to dismiss. *Id.* Mr. Webb responded on June 25, 2018. *Id.*

On September 27, 2018, the special master issued a decision granting the government's motion. *Webb v. Sec'y of Health and Human Servs.*, No. 15-803V, 2018 WL 5292226, at *1 (Fed. Cl. Sept. 27, 2018). The special master found that the November 30, 2012 medical record was "precise, cogent, and clear" and demonstrated that Mr. Webb developed Bell's palsy on his left side months before his November 2012 flu vaccination. *Id.* at *7. The special master observed that Mr. Webb's other medical records and Health Needs Requests were silent regarding his left-side Bell's palsy symptoms, but the special master rejected Mr. Webb's argument that this silence proved that he had no such symptoms before his November 20, 2012 vaccination. *Id.* at *7–8. Accordingly, the special master denied Mr. Webb's claim for lack of causation.

On July 29, 2021, the Court of Federal Claims issued an order sustaining the special master's decision. *Webb v. Sec'y of Health and Human Servs.*, No. 15-803V, 2021 WL 4077553, at *1 (Fed. Cl. July 29, 2021). The Court of Federal Claims first determined that the special master did not abuse its discretion or violate Mr. Webb's due process rights by failing to hold a status conference after the government submitted its supplemental report. *Id.* at *6–7. The court reasoned that the Vaccine Rules do not require any such status conference, and instead the matter comes within the special master's "wide discretion" to conduct proceedings. *Id.* at *7. Second, the court determined that the special master did not act arbitrarily or

capriciously in determining, based on the record evidence, that Mr. Webb's left-side Bell's palsy began prior to his November 20, 2012 flu vaccine. *Id.* at \*8. The court reasoned that the special master considered all the relevant evidence and articulated a rational basis for his finding. *Id.*

Mr. Webb appealed. We have jurisdiction pursuant to 42 U.S.C. § 300aa–12(f).

### STANDARD OF REVIEW

Under the Vaccine Act, the Court of Federal Claims has jurisdiction to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa–12(e)(2)(B). We apply the same standard when reviewing a decision by the Court of Federal Claims in a case brought under the Vaccine Act. *Milik v. Sec'y of Health and Human Servs.*, 822 F.3d 1367, 1375 (Fed. Cir. 2016) (citation omitted).

We have explained that "[a]n abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, or fanciful; is based on an erroneous conclusion of law; rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the [decisionmaker] could base its decision." *Cottingham on Behalf of K.C. v. Sec'y of Health and Human Servs.*, 971 F.3d 1337, 1345 (Fed. Cir. 2020). Further, with respect to the arbitrary and capricious standard, "[i]f the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision,' then reversible error is 'extremely difficult to demonstrate.'" *Milik*, 822 F.3d at 1376 (quoting *Hines on Behalf of Sevier v. Sec'y of Health and Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). We "do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters

within the purview of the fact finder." *Porter v. Sec'y of Health and Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011). Thus, "as long as the special master's 'conclusion [is] based on evidence in the record that [is] not wholly implausible, we are compelled to uphold that finding as not being arbitrary or capricious.'" *Milik*, 822 F.3d at 1367 (quoting *Cedillo v. Sec'y of Health and Human Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010)).

## DISCUSSION

### I

Mr. Webb "presents here a factual dispute," he states, on whether he adequately showed a proximate temporal relationship between vaccination and injury, as required under *Althen v. Secretary of Health and Human Services*, 418 F.3d 1274, 1278 (Fed. Cir. 2005), to establish entitlement to compensation for a vaccine injury. Appellant's Br. 10. In essence, Mr. Webb contends that the special master improperly weighed competing evidence and, as a result, wrongly found that Mr. Webb's symptoms began before his vaccination and consequently that he is not entitled to compensation under the Vaccine Act. Mr. Webb specifically contends that "there is error in the [s]pecial [m]aster's analysis on divergent pieces of evidence." *Id.* According to Mr. Webb, the special master erred by not "lessen[ing] the weight," on hearsay grounds, of an assertion in a November 30, 2012 medical record. *Id.* The record asserts, in particular, that Mr. Webb had informed the examining physician that Mr. Webb's left-side Bell's palsy began in September 2012, i.e., prior to Mr. Webb's November 20, 2012 flu vaccine. *Id.* In addition, Mr. Webb contends that the special master erred by "ignoring" a statement by a nurse during a routine visit on October 9, 2012—that Mr. Webb was not in distress and had no concerns or complains—because this statement "negated the existence of a condition" prior to his vaccination. *Id.* at 10–11. Mr. Webb contends that the special master

erroneously found that the October 9, 2012 visit did not involve a physical examination, when instead the blood pressure test conducted during that visit "did [involve] a limited physical examination." *Id.* at 12.

Mr. Webb asks us to engage in an activity beyond our authority as constricted by statute and precedent—namely to reweigh the evidence concerning when Mr. Webb developed his left-side Bell's palsy. We decline to do so. *See, e.g.*, *Milik*, 822 F.3d at 1376; *Porter*, 663 F.3d at 1249. The special master expressly considered the evidence that Mr. Webb contends should be reevaluated. *See Webb*, 2018 WL 5292226, at *4 (discussing the medical records relating to his October 2012 and November 2012 appointments), *7 (discussing the alleged "blunder" in the November 30, 2012 medical record). The special master grappled with Mr. Webb's arguments and articulated sound reasons why Mr. Webb's interpretation of the evidence should be rejected in favor of the plain language of the November 30, 2012 medical report. *See id.* at *7. Specifically, the November 30, 2012 record indicates a temporal connection between the onset of Mr. Webb's left-side Bell's palsy and his guilty verdict two weeks earlier. *Id.* In addition, the fact that his medical reports from October and November 2012 did not mention his Bell's palsy symptoms is "entirely consistent with Mr. Webb's testimony that he did not think that anything could be done and that he had self-diagnosed the issue as the same Bell's palsy that had occurred on the right side of his face a year prior." *Id.* Mr. Webb does not persuasively explain how the special master's analysis on these points was untethered from a factual basis.

The special master also considered Mr. Webb's argument that the Health Needs Requests he filed suggest that he had not experienced Bell's palsy on his left side until after his vaccine. *Id.* at *7–8. The special master reasoned, however, that the absence of any specific mention of his left-side Bell's palsy in those records, again, was consistent

with Mr. Webb's own self-diagnosis and stated belief that nothing could be done. *Id.* at *8. The special master thus found that those records were insufficient to prove that Mr. Webb's symptoms did not begin until after his vaccination. Mr. Webb again fails to explain how the special master's interpretation of the evidence is without a sound factual basis.

## II

Mr. Webb also argues that the special master abused his discretion in failing to conduct a status conference after the government submitted its supplemental Vaccine Rule 4(c) report. Appellant's Br. 15. According to Mr. Webb, the special master held an early status conference on March 20, 2018, under Vaccine Rule 4(b). *Id.* at 16. At the conference, Mr. Webb states, the special matter allowed Mr. Webb to submit additional materials and ordered the respondent to submit a supplemental report 60 days later. *Id.* "This triggered [Mr. Webb's] right to a Vaccine Rule 5 status conference as a matter of law." *Id.* at 17. According to Mr. Webb, however, the special master issued his dismissal decision without conducting the required conference and without warning Mr. Webb in violation of his due process rights. *Id.* at 17–18. Mr. Webb contends that, if the special master had conducted a conference as required, Mr. Webb would have discussed the October 9, 2012 and November 14, 2012 medical records that allegedly suggest a lack of symptoms at those times. *Id.* at 19, 23.

The government responds that the special master satisfied the requirements the Vaccine Rules. Appellee's Br. 17–21. Specifically, according to the government, the special master met Vaccine Rule 5's requirement for a "status conference within 30 days after the filing of the respondent's report under Vaccine Rule 4(c)" by holding a conference on April 26, 2016, following the respondent's submission of its Rule 4(c) report. *Id.* at 17. The government asserts that nothing in the Vaccine Rules entitles

Mr. Webb to a second conference under Vaccine Rule 5 following the government's submission of a supplemental Vaccine Rule 4(c) report. *Id.* at 18. The government also points out that the special master held three additional status conferences on July 25, 2016, October 31, 2016, and March 20, 2018, and that the special master has "wide discretion" in conducting proceedings. *Id.* (citing *Burns by Burns v. Sec'y of Health and Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993)). Further, the government contends that Mr. Webb has not adequately shown that an additional status conference would have affected the case, given that the special master considered Mr. Webb's argument that medical records showed a lack of symptoms by virtue of their silence. *Id.* at 19–20.

We agree with the government and conclude that Mr. Webb has not shown that the special master's failure to conduct a status conference following the government's submission of a supplemental report under Vaccine Rule 4(c) affected the case. Vaccine Rule 5(a) provides that "[t]he special master will hold a status conference within 30 days after the filing of respondent's report under Vaccine Rule 4(c)."[1] Here, the government submitted its Vaccine Rule 4(c) report on April 20, 2016, and the special master held a status conference on April 26, 2016. Appx 4. The special master held three additional status conferences on July 25, 2016, October 31, 2016, and March 20, 2018. Appx 4–7. We do not reach the question whether Vaccine Rule 5(a) imposes on a special master the

---

[1]    Vaccine Rule 4(c) requires the respondent to "file a report setting forth a full and complete statement of its position as to why an award should or should not be granted" and specifies that the report "must contain respondent's medical analysis of petitioner's claims and must present any legal arguments that the respondent may have in opposition to the petition."

requirement to conduct a status conference after a respondent submits a supplemental Vaccine Rule 4(c) report because we cannot conclude, on the record before us, that Mr. Webb was deprived of a full and fair opportunity to present his case. The special master granted Mr. Webb numerous extensions of time, Appx 2–10, and, in his dismissal decision, the special master expressly considered the evidence that Mr. Webb contends he was prevented from presenting, *see Webb*, 2018 WL 5292226, at *3 (discussing medical records from Mr. Webb's appointments in October and November 2012 indicating no complaints by Mr. Webb).

## CONCLUSION

We conclude that the special master's finding that Mr. Webb's Bell's palsy began prior to his November 20, 2012 flu vaccination was not arbitrary or capricious. We further conclude that the special master's failure to conduct a status conference after the government submitted its supplemental Vaccine Rule 4(c) report did not prejudice Mr. Webb's claim. We have considered Mr. Webb's remaining arguments but find them unpersuasive. Accordingly, we affirm.

## AFFIRMED

### COSTS

No costs.