NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRIAN ANKLAM, KAREN ANKLAM, AS THE LEGAL REPRESENTATIVES OF THE ESTATE OF THEIR DAUGHTER, N.A., DECEASED,**
*Petitioners-Appellants*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2024-2161

---

Appeal from the United States Court of Federal Claims in No. 1:17-vv-02061-EGB, Senior Judge Eric G. Bruggink.

---

Decided:  February 20, 2026

---

CURTIS RANDAL WEBB, Monmouth, OR, argued for petitioners-appellants.

ALEC SAXE, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M.

BOYNTON, C. SALVATORE D'ALESSIO, TRACI PATTON, HEATHER LYNN PEARLMAN.

_____

Before DYK, PROST, and CUNNINGHAM, *Circuit Judges.*

DYK, *Circuit Judge.*

Petitioners Brian and Karen Anklam, as the legal representatives of the estate of their daughter, N.A., appeal a Court of Federal Claims ("Claims Court") decision affirming a special master's decision denying them compensation under the National Vaccine Injury Compensation Program. That program was established by the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–300aa-34) ("Vaccine Act"). They also appeal a Claims Court decision denying petitioners' motion to reopen the record to consider a new medical article. We see no error in the Claims Court's decision on the merits or its decision not to itself reopen the record. However, in light of the unique circumstances here, we vacate the Claims Court's judgment and remand for the special master to consider in the first instance whether the record should be reopened.

## BACKGROUND

On the night of June 30 and July 1, 2016, N.A. died unexpectedly. N.A. was previously a healthy one-year-old; she had received a Mumps, Measles, Rubella, and Varicella ("MMRV") vaccine on June 23, 2016, a week before her death. On June 30, Mrs. Anklam took N.A. and her siblings to a splash park. After returning home, Mrs. Anklam described N.A. feeling "a little warm" but not "warm enough . . . to take her temperature."

App'x 100.[1]   So, Mrs. Anklam, a registered nurse, gave N.A. Motrin and put her to bed.

When Mr. Anklam went to check on N.A. in the morning, he knew something was wrong.   N.A.'s body was positioned "like a little star," "her feet were purple" and "[h]er face was straight down to the mattress."   App'x 100. Mr. Anklam, an experienced paramedic, picked N.A. up and immediately realized N.A. was dead and had been for a while.   The autopsy concluded N.A. died from asphyxia.

On December 29, 2017, petitioners filed a petition for compensation under the Vaccine Act, alleging that N.A. died because of a febrile seizure (a seizure triggered by a fever) caused by the MMRV vaccine.   The case was assigned to a special master, who held an entitlement hearing on July 12 and 13, 2022, where both petitioners and the Secretary of Health and Human Services presented testimony and thereafter filed briefs.   Because N.A.'s death was an off-Table injury, petitioners were required to prove a causation theory under the three prongs from *Althen v. Secretary of Health and Human Services*, 418 F.3d 1274 (Fed. Cir. 2005).   Petitioners' theory was that the vaccine caused N.A. to have a febrile seizure that led to her death.   The parties stipulated that the "MMRV[] vaccine can cause febrile seizures" and "[m]ost . . . MMRV[] vaccine related seizures occur 7 to 10 days after a child has received the MMRV vaccine." App'x 95.   They also stipulated that "N.A.'s older brother . . . experienced febrile seizures" on two occasions. App'x 94–95.

On November 29, 2023, the special master concluded that petitioners "failed to provide preponderant evidence

---

[1]   Citations to the App'x refer to the Corrected Appendix filed by petitioners at Dkt. No 20 in No. 2024-2161.

that N.A.'s MMRV vaccine caused her death." App'x 3. This decision primarily rested on two findings; first, that petitioners did not present preponderant evidence that N.A. suffered a seizure; and second, that petitioners did not present preponderant evidence that the MMRV vaccine can cause a seizure which can lead to death under *Althen* prong one.

On December 29, 2023, the Anklams petitioned the Claims Court to review the special master's decision. On January 4, 2024, after the special master's decision, and after petitioners sought review from the Claims Court, a new medical article was published connecting unexplained sudden deaths in children to unobserved seizures (the "Gould article").[2] The Gould article examined seven videos of toddlers with unexplained sudden deaths' last sleep period and found that six of these videos showed clear evidence of the seizures, suggesting a link between unexplained sleep-related deaths and seizures. Two of the cases were associated with fevers. On January 16, 2024, petitioners filed a motion to reopen the record based on the Gould article.

On May 28, 2024, the Claims Court affirmed the special master's decision on the merits, finding "petitioners did not establish the factual predicate that N.A. suffered a febrile seizure," App'x 75, without reaching the special master's second ground that there was no preponderant evidence that the MMRV vaccine can cause febrile seizures that lead to death.

In the same opinion, the Claims Court addressed petitioners' motion to reopen the record. In that respect, the Claims Court identified four relevant factors: (1) the

---

[2] Laura Gould, et al., *Research Article: Video Analyses of Sudden Unexplained Deaths in Toddlers*, Neurology, Jan. 4, 2024.

nature of the proffered new evidence, (2) the prejudice to the parties, (3) the length of the delay, and (4) the reason for the delay. *Vant Erve v. Sec'y of Health & Hum. Servs.*, 39 Fed. Cl. 607, 612 (1997). The Claims Court noted, however, that "these factors do not have equal weight, and the first factor is paramount." App'x 76 (citing *Vant Erve*, 39 Fed. Cl. at 612). We have previously assumed that the *Vant Erve* test provides the appropriate standard for reopening the record. *See Stone v. Sec'y of Health & Hum. Servs.*, 676 F.3d 1373, 1386 (Fed. Cir. 2012). Both petitioners and the government assume it is the correct test.

The Claims Court denied petitioners' motion to reopen the record. Resting its decision on the first *Vant Erve* factor, the Claims Court determined that "although the [Gould article] is broadly relevant to the general theory of causation, . . . . the [s]pecial [m]aster's holding is rooted in her finding that the evidence does not show that N.A. suffered a seizure." App'x 76. The Claims Court concluded that the Gould article does not speak directly to that issue "because it does not suggest a cause for those seizures nor involve any linkage to vaccinations." App'x 77. Accordingly, the Claims Court did not find that "the probative value [was] sufficient to reopen the record." App'x 77.

Petitioners appeal. We have jurisdiction under 42 U.S.C. § 300aa-12(f).

## DISCUSSION

"We review an appeal from the Court of Federal Claims in a Vaccine Act case de novo, applying the same standard of review that court applied in reviewing the special master's decision." *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1375 (Fed. Cir. 2016). We review the Claims Court's decision not to reopen the record for abuse of discretion. *See Stone*, 676 F.3d at 1385. The consequence of reopening the record would

be to permit the parties to address the Gould article with additional expert reports and testimony.

On appeal, petitioners argue that they provided preponderant evidence to the special master that N.A. suffered a seizure in light of the parties' stipulations and other evidence, including that N.A. died a sudden unexplained death, that N.A. received an MMRV vaccine seven days before her death, and that her brother suffered two febrile seizures. Petitioners also argue that the special master erred in concluding they did not present preponderant evidence of a sound and reliable medical theory explaining how the MMRV vaccine can cause a febrile seizure that leads to death. The Claims Court did not reach the second issue because it agreed with the special master that petitioners did not present preponderant evidence that N.A. suffered a seizure. We agree on the record as it stood before the special master that the special master did not err in concluding that petitioners did not present preponderant evidence of a seizure.

We also see no error in the Claims Court's decision not to itself reopen the record. However, rather than denying the motion outright, we conclude this case should be remanded for the special master to consider in the first instance whether reopening the record is appropriate in light of the Gould article.

Since petitioners filed their motion only two days after the Gould article was published, petitioners have satisfied factors 3 and 4 of *Vant Erve*. The relevant question is whether the Gould article "is relevant and affective of outcome." *Vant Erve*, 39 Fed. Cl. at 612. "[I]f the evidence is of marginal relevance and impact, the burden on the moving party increases dramatically with respect to the influence of the remaining factors. . . . On the other hand, if the evidence is highly relevant and clearly outcome determinative, the opposite follows—the importance of the remaining factors diminishes." *Id*.

Here, the special master denied compensation under the Vaccine Act because petitioners (1) "did not prove by preponderant evidence that N.A. suffered a seizure prior to her death," App'x 49, and (2) "failed to provide preponderant evidence of a sound and reliable theory to explain how the MMRV vaccine can cause a seizure . . . which can lead to death," App'x 52. The Gould article may be relevant to the second issue (an issue not addressed by the Claims Court) but is less clearly relevant to the first. While the Claims Court did not err in holding that reopening the record was not required as a matter of law, we think the special master should have the opportunity in the first instance to consider whether the record should be reopened and exercise its discretion in light of the Gould article.

Under the statute, the special masters "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions." 42 U.S.C. § 300aa-12(d)(2)(A); *see also* H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.). To that end, special masters provide "flexible and informal standards of admissibility of evidence," 42 U.S.C. § 300aa-12(d)(2)(B), and are expected to contribute independent expertise in "health, medicine, and public health," H.R. Rep. No. 101-386, at 515 (1989) (Conf. Rep.). Given that Congress committed the fact-finding role in vaccine cases to the special masters while also charging them to admit evidence on a flexible basis, we think that posing the question whether to reopen the record to the special master best reflects the statutory purpose of the Office of Special Masters in the unusual circumstances of this case, including the complexity of this case, the evidence supporting petitioners' position, and the special master's unique knowledge of the facts.

## CONCLUSION

Accordingly, we vacate the Claims Court's judgment and remand for the sole purpose of enabling the special

master to consider the Gould article and whether the record should be reopened for further evidence.

**VACATED AND REMANDED**

COSTS

No costs.